**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL STEVE COX, ) | |
| ) | 3:12-cv-00017-RCJ-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| JACK PALMER, *et al.*, ) | |
| ) | |
| Defendants. ) | August 14, 2013 |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are plaintiff's motions for a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125).[1] Defendants have not opposed any of these motions. The court has thoroughly reviewed the record, and recommends that plaintiff's motions for a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Michael Steve Cox ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#21, p. 1). On February 16, 2012, plaintiff filed a first amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials and others violated his First, Eighth and Fourteenth Amendment rights (#21). The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's Eighth Amendment claim against defendants Victor Hicks, E.K. McDaniel, Richard

---

[1] Refers to the court's docket numbers.

-1-

Rimington, Judith He'bert, Michael Koehn, Charles Mahakian and Gregory Martin to proceed (#25, p. 10).

In plaintiff's first amended complaint, he alleges that defendant Rimington knew that plaintiff used ambulatory aids (such as a quad cane or wheelchair), yet refused to provide plaintiff with ambulatory assistance to attend a telephonic legal conference (#21, p. 20). Plaintiff alleges that defendant Rimington refused ambulatory assistance on orders from defendants McDaniel, Koehn and Martin. *Id.* Plaintiff claims that after defendant Rimington handcuffed plaintiff's arms behind his back, he fell, breaking several ribs and dislocating his hand and thumb. *Id.* at 21. Thereafter, defendants Koehn, Martin, He'bert and Mahakian delayed medical treatment for one day and placed plaintiff on suicide watch. *Id.* at 23. Defendant Hicks also apparently denied medical treatment. *Id.*

Plaintiff has now filed seven motions requesting a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125). In these motions, plaintiff sets forth various factual allegations pertaining to events that occurred after he filed the current lawsuit. The court summarizes plaintiff's allegations below:

*Docket Number 81*:

Plaintiff alleges that ESP law librarians denied his requests for additional monthly legal supplies (#81, pp. 2-4). Plaintiff asks the court for a mandatory injunction ordering ESP librarians to comply with prison regulations, provide plaintiff with his approved $2.23 worth of monthly legal supplies, and deliver his photocopy work orders in a timely fashion. *Id.* at 6. In the alternative, plaintiff asks the court to assess a penalty of $70.00 for each law library infraction plaintiff is forced to endure. *Id.*

*Docket Numbers 113/114:*

Plaintiff alleges that ESP law librarians denied his requests for additional monthly legal supplies and destroyed several legal documents (#113/114, pp. 2-3).  Plaintiff also alleges that in March 2013, Caseworker Fletcher repeatedly banged on plaintiff's cell door, exacerbating plaintiff's medical condition.  *Id.* at 3-4.  Finally, plaintiff alleges that Caseworker Fletcher returned improper grievance responses but refused to re-submit them, delayed in providing plaintiff with blank grievance forms, demanded that plaintiff exit his cell to sign grievances, and threatened to destroy plaintiff's grievances.  *Id.* at 4-7.  Plaintiff asks the court for a mandatory injunction ordering ESP librarians to comply with prison regulations and provide plaintiff with additional monthly legal supplies.  *Id.* at 10.  Plaintiff also asks the court to order ESP officials to assign a new caseworker to plaintiff's unit.  *Id.*

*Docket Number 115*:

Plaintiff alleges that Caseworker Fletcher is hostile toward non-white inmates, and that he regularly rams a cart against plaintiff's cell door (#115, pp. 2-3).  Plaintiff also alleges that Caseworker Fletcher shows plaintiff's grievances to other inmates, detaches the pages from plaintiff's grievances so that they are out of sequence, threatens to destroy plaintiff's grievances, and on two or three occasions, has ordered plaintiff to exit his cell without ambulatory assistance—in violation of two court orders.[2]  *Id.* at 4-5.  Plaintiff asks the court for a mandatory injunction ordering ESP officials to assign a new caseworker to plaintiff's unit, and to restore the seventy to one-hundred grievances that have been affected by Fletcher's actions.  *Id.* at 7.

---

[2] Plaintiff refers to 3:08-cv-00663 (#126, #128, #151) and 3:08-cv-00110 (#96).  In case no. 3:08-cv-00663, plaintiff's motion for ambulatory assistance was denied.  In case no. 3:08-cv-00110, the court ordered ESP officials to provide plaintiff with ambulatory assistance for the limited purpose of having plaintiff attend his scheduled telephonic hearings.

*Docket Number 119*:

Plaintiff alleges that in October 2012 and November 2012, and again on May 8, 2013, ESP prison officials ordered plaintiff to kneel down in violation of two court orders (#119, p. 4). Plaintiff asks the court for a mandatory injunction ordering Correctional Officer Radford to comply with the court's "no kneel-down" orders and provide plaintiff with ambulatory assistance for escort to all legal, medical, dental and administrative appointments. *Id.* at 8.

*Docket Number 120*:

Plaintiff alleges that in January 2013, he sent Caseworker Sandoval twenty-four court orders for inclusion in his institutional and medical files, but that unspecified ESP mail room employees confiscated and/or destroyed these documents (#120, pp. 3-4). Plaintiff also alleges that from January 2013 to March 2013, ESP law librarians delayed in granting his requests for monthly legal supplies, which forced plaintiff to submit court documents on improper stationary. *Id.* at 4. Finally, plaintiff alleges that in April 2013 and May 2013, ESP law librarians asked plaintiff for proof of his outstanding lawsuits (even though plaintiff had already submitted this information), and then subsequently lost the submitted documents. *Id.* at 5-6. Plaintiff asks the court for "adequate compensation/replacement" of his legal supplies and court documents. *Id.* at 9.

*Docket Number 123*:

Plaintiff alleges that from May 6, 2013 to June 6, 2013, ESP correctional officers refused to answer plaintiff's intercom calls (#123, pp. 2-3). Plaintiff also alleges that in June 2013, he was denied access to law library stationary and grievance forms. *Id.* at 4. Plaintiff asks the court for a mandatory injunction ordering ESP officials to answer plaintiff's intercom calls and to provide him with law library stationery. *Id.* at 7.

*Docket Number 125*:

Plaintiff alleges that: ESP correctional officers used "kneel-down orders" in violation of two court orders (#125, pp. 2, 5, 7); he was denied necessary dental work (#125, p. 2); he was dragged six hundred yards behind an "illegal" wheelchair (#125, p. 2); he was labeled a vexatious litigant by a state court in Ely, Nevada (#125, p. 4); he was forced to use a plastic bag to contain his excrement, as prison officials delayed in calling a plumber for a backed-up sewage line (#125, pp. 6-7); and that four ESP correctional officers repeatedly spit in and/or contaminate his food tray. *Id.* at 9-11. Plaintiff asks the court for a mandatory injunction ordering ESP officials to follow the court's "no kneel-down" orders, provide plaintiff with ambulatory assistance, and replace the four correctional officers who are contaminating his food. *Id.* at 14-16.

## II. DISCUSSION & ANALYSIS

### A. Legal Standards

#### 1. Temporary Restraining Order

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. *See* Fed.R.Civ.P. 65(b); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (2d ed. 1995). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Los Angeles Unified Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

#### 2. Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Its sole purpose is to

preserve the status quo ante litem (the status that existed before the lawsuit) pending a determination of the case on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009); 11A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2947 (2d ed. 1995) ("[A] preliminary injunction . . . is issued to protect the plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits."). A plaintiff seeking a preliminary injunction must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[when] a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief should not be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act ("PLRA") mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, section 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

**B.    Analysis**

The court finds that plaintiff seeks to enjoin conduct which is unrelated to his underlying lawsuit. The Supreme Court has found that a preliminary injunction is appropriate to grant relief of the "same character as that which may be granted finally." *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945). A court may not issue an injunction in "a matter lying wholly outside the issues in the suit." *Id.* Although the Ninth Circuit has not addressed this issue directly, other circuits have repeatedly held that a plaintiff seeking injunctive relief must show "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010) (no preliminary injunction where motion for relief was based on facts and circumstances entirely different from initial claim); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (same).

Courts use injunctive relief to address issues related to the underlying violations presented in the complaint. In plaintiff's first amended complaint, he alleges that defendant Rimington refused to provide him with ambulatory assistance; and as a result, plaintiff fell, breaking several ribs and dislocating his hand and thumb (#21, pp. 20-21). Thereafter, defendants Koehn, Martin, He'bert, Mahakian and Hicks delayed and/or denied appropriate medical treatment, in violation of the Eighth Amendment. *Id.* at 23. However, in plaintiff's seven motions for a temporary restraining order, he alleges that various non-defendant ESP personnel have denied his requests for additional legal supplies, banged on his cell door, thwarted his attempts to file prison grievances, ordered him to exit his cell without ambulatory assistance, ordered him to kneel down, confiscated and/or destroyed copies of court orders, refused to answer his intercom calls, denied law library stationary, denied necessary dental work, dragged him behind an "illegal" wheelchair, delayed in calling a plumber and contaminated his food.

The court finds that these factual allegations are unrelated to plaintiff's Eighth Amendment claim in his first amended complaint. Plaintiff makes no attempt to show how the non-defendant ESP employees' alleged recent acts are connected to plaintiff's claim that he received constitutionally inadequate medical care for his broken ribs and dislocated hand and thumb. New, unrelated complaints are properly lodged using the prison grievance system, and if they remain unresolved, by filing a new action.

Although plaintiff's allegations that unspecified or non-defendant ESP personnel failed to provide him with ambulatory aid is marginally related to his underlying Eighth Amendment claim (plaintiff alleges that defendant Rimington also failed to provide him with ambulatory aid), the court notes that plaintiff makes these allegations against unspecified individuals or individuals who are not named as parties in this lawsuit. Courts may not rule on the rights of persons not currently before

them. *Zepeda v. U.S. Immigration Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."). As these unspecified and non-defendant ESP correctional officers are not parties to plaintiff's lawsuit, the court may not fashion injunctive relief ordering them to provide plaintiff with ambulatory assistance.

The court does not have jurisdiction to decide plaintiff's motions for a temporary restraining order, as these motions allege different claims than the claim in his first amended complaint and involve individuals who are not defendants in the present lawsuit. Due to these procedural deficiencies, the court will not undertake a full analysis of plaintiff's requests for injunctive relief. However, the court notes that plaintiff does not attempt to meet the standard for granting injunctive relief and does not discuss how he meets the four temporary restraining order/ preliminary injunction requirements.

The court recommends that plaintiff's motions for a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125) be denied because the allegations in plaintiff's motions are not related to the allegations in the underlying lawsuit and involve individuals who are not defendants in the present lawsuit. Furthermore, plaintiff has not demonstrated that he is likely to succeed on the merits, that he is likely to suffer irreparable harm related to his underlying claim, that the balance of equities tips in his favor, or that an injunction is in the public interest.

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court recommends that plaintiff's motions for a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125) be **DENIED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motions for a temporary restraining order (#81, #113/114, #115, #119, #120, #123, #125) be **DENIED**.

**DATED:** August 14, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**