**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN MICHAEL COX, ) | |
| ) | 3:12-cv-00017-RCJ-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| JACK PALMER, *et al.*, ) | |
| ) | |
| Defendants. ) | August 19, 2013 |
| _____) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#97).[1] Plaintiff did not oppose defendants' motion for summary judgment despite receiving an extension of time to do so. The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#97) be granted.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Steven Michael Cox ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#21, p. 1). On February 16, 2012, plaintiff filed a first amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials and others violated his First, Eighth and Fourteenth Amendment rights (#21). The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's Eighth Amendment claim against defendants Victor Hicks, E.K. McDaniel, Richard

---

[1] Refers to the court's docket numbers.

Rimington, Judith He'bert, Michael Koehn, Charles Mahakian and Gregory Martin to proceed (#25, p. 10).

Plaintiff alleges that defendant Rimington knew that he required ambulatory assistance (such as a quad cane or wheelchair), yet refused to provide plaintiff with ambulatory assistance to attend a telephonic legal conference (#21, p. 20). Plaintiff claims that defendant Rimington acted on orders from defendants McDaniel, Koehn and Martin. *Id.* Plaintiff alleges that after defendant Rimington handcuffed his arms behind his back, he fell and suffered broken ribs and a dislocated hand and thumb. *Id.* at 21. Thereafter, defendants Koehn, Martin, He'bert and Mahakian delayed medical treatment for one day and placed plaintiff on suicide watch. *Id.* at 23. Defendant Hicks also apparently denied medical treatment. *Id.*

Defendants allege that on July 27, 2010, at approximately 9:25 a.m., defendant Rimington went to plaintiff's cell to escort him to ESP's visiting area so that plaintiff could review some legal documents (#97-1, Ex. J, ¶ 5). Defendant Rimington placed plaintiff in wrist restraints, then signaled for the control bubble to open plaintiff's cell door. *Id.* Plaintiff stepped out of his cell and asked defendant Rimington if he was going to allow plaintiff to lean on him while defendant Rimington escorted plaintiff to the visiting area. *Id.* Defendant Rimington replied that if plaintiff wished to review his legal documents, he would have to walk on his own (#97-1, Ex. A, p. 2). Plaintiff retorted, "Oh is that the way it's going to be then" (#97-1, Ex. J, ¶ 5; #97-1, Ex. A, p. 2). Plaintiff then took several large steps and flopped onto the ground, landing on his right side. *Id.* Several correctional officers witnessed plaintiff's fall (#97-1, Ex. A, pp. 1, 3). Defendant Rimington and the other correctional officers asked plaintiff if he was injured (#97-1, Ex. J, ¶ 6; #97-1, Ex. A, p. 2). Plaintiff stated that he was fine, and that defendant Rimington had caused the fall because defendant Rimington would not help plaintiff walk. *Id.* Plaintiff then began to drag himself toward

the sally port. *Id.* Defendant Rimington told plaintiff to hold still and that he would call ESP's medical department. *Id.* Plaintiff refused and stated that he did not need medical treatment. *Id.* Defendant Rimington again told plaintiff to hold still so that medical staff could check him. *Id.* Plaintiff again stated that he did not need medical assistance, and proceeded to drag himself to the sally port, where he could go no further. *Id.* At the sally port, plaintiff stated that he was going to sue defendant Rimington for attempted murder of an elderly person and negligence. *Id.*

The correctional officers who witnessed plaintiff's fall called Sergeant Drummond and described the incident (#97-1, Ex. A). Sergeant Drummond went to ESP's medical department to see if plaintiff had any ambulatory orders in his medical file. *Id.* at 4. Medical staff checked plaintiff's file and informed Sergeant Drummond that there were no orders indicating that plaintiff could not walk or that he needed ambulatory assistance.[2] *Id.* Sergeant Drummond informed plaintiff that his medical file did not contain any orders for ambulatory assistance, and stated that if plaintiff did not want to walk to ESP's visiting area, he would be deemed to have refused to review his legal paperwork. *Id.* Plaintiff then stated that he needed medical attention and thought he had broken a rib during the fall. *Id.* at 2, 4.

Nurse Curto responded to the call (#98, Ex. B (*sealed*)). She noted that plaintiff refused to get off the floor and stated that he had a broken rib under his right shoulder. However, plaintiff refused to go to the infirmary (#98, Ex. B (*sealed*); #98, Ex. C, p. 14 (*sealed*)). Nurse Curto determined that plaintiff could be escorted back to his cell until a doctor could examine him (#98, Ex. B (*sealed*); #97-1, Ex. A, p. 4). Later that day, correctional officers observed plaintiff using both arms to move boxes and a television set without any difficulty (#98, Ex. H, p. 10 (*sealed*)). Despite plaintiff's continued refusal to go to the infirmary, at approximately 4:45 p.m., correctional officers

---

[2] On May 13, 2010, defendant Koehn discontinued plaintiff's no-kneel restrictions, cane, belly chains and boots (#98, Ex. F, p. 11 (*sealed*); #98, Ex. G (*sealed*)).

escorted him to the infirmary in a wheelchair (#98, Ex. O, ¶ 12 (*sealed*)). Plaintiff was able to sit in the wheelchair with his hands behind his back (#98, Ex. H, p. 10 (*sealed*)). Due to plaintiff's self-inflicted fall, ESP medical staff admitted plaintiff to the infirmary with only his mattress, boxers and a suicide blanket (#98, Ex. O, ¶ 13 (*sealed*); #98, Ex. F, p. 10 (*sealed*)). These property limitations were recommended to prevent plaintiff from attempting any further self-injury (#98, Ex. H, p. 10 (*sealed*)).

On July 28, 2010, plaintiff was transferred to the William Bee Ririe Hospital in Ely, Nevada, to evaluate his "broken ribs" (#98, Ex. O, ¶ 14 (*sealed*)). Plaintiff received a chest x-ray, which showed categorically negative results with respect to trauma (#98, Ex. O, ¶ 14 (*sealed*); #98, Ex. I, p. 1 (*sealed*)). Plaintiff was then transported back to ESP (#98, Ex. O, ¶ 14 (*sealed*)).

On July 29, 2010, plaintiff complained that he had dislocated his thumb during the fall two days before (#98, Ex. O, ¶ 15 (*sealed*); #98, Ex. H, p. 8 (*sealed*)). However, plaintiff was able to demonstrate the full range of motion with both thumbs. *Id.* On June 30, 2010, plaintiff requested tape for his thumb, so ESP medical staff taped plaintiff's right thumb in an upright position. *Id.* Later that day, at approximately 5:10 p.m., a correctional officer found plaintiff unresponsive, lying on the floor of his cell (#98, Ex. O, ¶ 16 (*sealed*); #98, Ex. H, p. 7 (*sealed*)). ESP medical staff were unable to identify the cause of plaintiff's condition, and transported him back to the hospital for evaluation and treatment. *Id.* Hospital staff gave plaintiff another chest x-ray and a head CT scan (#98, Ex. O, ¶ 16 (*sealed*); #98, Ex. I, pp. 2-3 (*sealed*)). Both tests yielded negative results. *Id.* At 10:15 p.m., NDOC medical officials approved plaintiff's transfer via Life-Flight to Carson-Tahoe Hospital in Carson City, Nevada (#98, Ex. O, ¶ 16 (*sealed*)).

On July 31, 2010, plaintiff was transported from Carson-Tahoe Hospital to Northern Nevada Correctional Center ("NNCC") (#98, Ex. H, p. 6 (*sealed*)). NNCC medical staff noted that an x-ray

of plaintiff's ribs, lungs and hand revealed no new trauma and that all injuries were old. *Id.* Medical staff also noted no bruising on plaintiff's right rib cage or arms, and no acute swelling or bruising on plaintiff's right hand or thumb. *Id.* Plaintiff was subsequently found guilty of falsely representing his medical condition in an attempt to get transferred to another prison where he could access the law library (#98, Ex. E (*sealed*)).

Defendants move for summary judgment on the grounds that: (1) defendants did not exhibit deliberate indifference to plaintiff's serious medical needs (#97, pp. 8-11); (2) defendants Hicks, Mahakian, He'bert and McDaniel had no personal involvement in plaintiff's July 27, 2010, incident (#97, pp. 12-13); and (3) defendants cannot be sued for damages in their official capacities. *Id.* at 13. Defendants attach several documents in support of their motion for summary judgment, including: (1) plaintiff's Investigation Detail Report for July 27, 2010 (#97-1, Ex. A);[3] (2) plaintiff's Unusual Occurrence Report for July 27, 2010 (#98, Ex. B (*sealed*));[4] (3) plaintiff's Release of Liability for Refusal of Medical Treatment forms for March 2010 through July 2010 (#98, Ex. C (*sealed*));[5] (4) plaintiff's Unusual Occurrence Report for July 30, 2010 (#98, Ex. D (*sealed*));[6] (5) plaintiff's disciplinary forms for Offense in Custody ("OIC") No. 312368 (#98, Ex. E (*sealed*));[7] (6) plaintiff's physician orders (#98, Ex. F (*sealed*));[8] (7) plaintiff's May 13, 2010, Medical Orders/Lay-in (#98, Ex. G (*sealed*));[9] (8) plaintiff's progress notes (#98, Ex. H (*sealed*));[10] (9) plaintiff's medical findings from William Bee Ririe Hospital in Ely, Nevada (#98, Ex. I (*sealed*));[11] (10) the declaration of Richard Rimington (#97-1, Ex. J); (11) the declaration of Judith He'bert (#97-1, Ex. K); (12) the

---

[3] Authenticated by the declaration of Harold M. Byrne (#97-1, p. 4, ¶ 8).
[4] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 5).
[5] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 6).
[6] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 7).
[7] Authenticated by the declaration of Harold M. Byrne (#97-1, p. 5, ¶ 9).
[8] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 8).
[9] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 9).
[10] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 10).
[11] Authenticated by the declaration of Fawn Cooper (#97-1, p. 3, ¶ 11).

declaration of Dr. Charles Mahakian (#97-1, Ex. L); (13) the declaration of Victor Hicks (#97-1, Ex. M); (14) the declaration of E.K. McDaniel (#97-1, Ex. N); and (15) the declaration of Dr. Michael Koehn (#98, Ex. O (*sealed*)).

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the court also notes that plaintiff has failed to oppose defendants' motion for summary judgment, despite receiving an extension of time to do so. Local Rule 7-2(d) provides that the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.

## II.  DISCUSSION & ANALYSIS

### A.  Legal Standards

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**2. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.  Analysis**

   **1.  Eighth Amendment Deliberate Indifference to a Serious Medical Need**

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence

of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Plaintiff contends that defendants exhibited deliberate indifference to his serious medical needs by providing him with constitutionally inadequate medical care for his broken ribs and dislocated hand and thumb (#21, pp. 20-23). Defendants contend that: (1) plaintiff cannot demonstrate that he had a serious medical need (#97, p. 9); (2) plaintiff cannot demonstrate that any delay in treatment led to further injury (#97, p. 10); (3) plaintiff cannot demonstrate that defendants possessed the requisite state of mind to succeed on his deliberate indifference claim (#97, pp. 10-11);

and (4) defendants Hicks, Mahakian, He'bert and McDaniel did not personally participate in plaintiff's medical treatment surrounding the July 27, 2010, incident. *Id.* at 12-13.

First, the court finds that there is no evidence that plaintiff suffered *any* injury as a result of the July 27, 2010, incident—let alone an injury constituting a serious medical need. Plaintiff underwent two x-rays for his "broken ribs" at William Bee Ririe Hospital in Ely, Nevada (#98, Ex. O, ¶ 14 (*sealed*); #98, Ex. I, p. 1 (*sealed*)). Both x-rays indicated no new trauma, and hospital staff could not identify any injury (#98, Ex. O, ¶ 16 (*sealed*); #98, Ex. I, pp. 2-3 (*sealed*)). NNCC medical staff also noted that plaintiff had no bruising on his right rib cage or arms (#98, Ex. H, p. 6 (*sealed*)). Plaintiff did not complain about his allegedly dislocated hand and thumb until July 29, 2010—two days after the fall (#98, Ex. O, ¶ 15 (*sealed*); #98, Ex. H, p. 8 (*sealed*)). At that time, plaintiff was able to demonstrate a full range of motion with both thumbs (#98, Ex. H, p. 6 (*sealed*)). Further, an x-ray of plaintiff's hand indicated no new trauma, and NNCC medical staff noted that plaintiff had no acute swelling or bruising on his right hand or thumb. *Id.*

Plaintiff's conduct also does not indicate that he suffered a serious injury as a result of the July 27, 2010, incident. After plaintiff fell, defendant Rimington asked plaintiff if he was injured (#97-1, Ex. J, ¶ 6; #97-1, Ex. A, p. 2). Plaintiff stated that he was fine, and repeatedly refused medical assistance. *Id.* After Nurse Curto evaluated plaintiff, he still refused to go to the infirmary (#98, Ex. B (*sealed*)). That afternoon, correctional officers observed plaintiff moving boxes and a television set (#98, Ex. H, p. 10 (*sealed*)). He was also able to "hook-up" without difficulty, and sit in a wheelchair with his hands behind his back (#98, Ex. O, ¶ 12 (*sealed*) ("Such motion would be extremely difficult if Mr. Cox were truly experiencing the injuries alleged.")). In short, there is no evidence that plaintiff's July 27, 2010, fall resulted in a serious medical need. Plaintiff cannot meet the objective requirement for his deliberate indifference claim.

Second, even if this court were to assume *arguendo* that plaintiff's alleged injuries constituted a serious medical need, the court finds that none of the defendants exhibited deliberate indifference to plaintiff's medical condition. Plaintiff alleges that defendant Rimington deliberately refused to provide him with ambulatory assistance. However, the record indicates that defendant Rimington was not aware of any medical order requiring plaintiff to be escorted with ambulatory assistance (#97-1, Ex. J, ¶ 8). In fact, defendant Koehn discontinued plaintiff's cane, no-kneel orders and boots on May 13, 2010 (#98, Ex. G (*sealed*); #98, Ex. O, ¶ 10 (*sealed*) ("inmate Cox has been provided a neurology examination and an electromyelogram was performed. These examinations and tests demonstrate that inmate Cox had no physical impairment that would require ambulatory assistance."). Defendant Rimington also properly refused plaintiff's request to lean on him during escort, as this could have jeopardized defendant Rimington's safety (#97-1, Ex. J, ¶ 7; #97-1, Ex. N, ¶ 5 ("[c]orrectional officers are not trained or allowed to provide support for leaning or walking inmates while being transported."). Finally, defendant Rimington is a correctional officer—not a medical provider. He is not qualified to make medical decisions or offer medical treatment (#97-1, Ex. J, ¶ 9). When plaintiff fell, defendant Rimington asked plaintiff if he was injured, told plaintiff to hold still, and contacted ESP's medical department (#97-1, Ex. J, ¶ 6; #97-1, Ex. A, p. 2). None of these actions evidences deliberate indifference to plaintiff's medical needs.

The record also indicates that plaintiff received constitutionally adequate, if not excessive, treatment for his non-existent injuries. There is simply no evidence that any of the named defendants acted with the subjective state of mind to deprive plaintiff of necessary care, or that they denied, delayed, or intentionally interfered with his medical treatment. *See Hutchinson*, 838 F.2d at 394. Instead, the record reveals that after plaintiff's fall, ESP medical staff attempted to admit him to the infirmary for closer observation (#98, Ex. O, ¶ 11 (*sealed*)). However, plaintiff refused to

move, claiming that he required a wheelchair or a gurney due to his "paralysis." *Id.* That afternoon, ESP medical staff ordered correctional officers to transport plaintiff to the infirmary using a wheelchair in order to prevent further delays. *Id.* at ¶ 12. Within the next three days, plaintiff received the following: (1) a chest x-ray and evaluation from physicians at William Bee Ririe Hospital in Ely, Nevada, (2) treatment for his "dislocated" thumb from ESP medical staff, (3) a second chest x-ray, head CT scan and evaluation from physicians at William Bee Ririe Hospital in Ely, Nevada, (4) a Life-Flight to Carson-Tahoe Hospital in Carson City, Nevada, and (5) an examination from NNCC medical staff in Carson City, Nevada (#98, Ex. O, ¶¶ 14-16 (*sealed*); #98, Ex. I (*sealed*); #98, Ex. H, p. 6 (*sealed*)). No injuries were found.

Plaintiff's disagreement with the objective medical evidence does not indicate deliberate indifference on the part of any of the named defendants. *See Franklin*, 662 F.2d at 1344 (prison medical staff do not violate the Eighth Amendment simply because their opinions concerning an inmate's medical treatment conflicts with the opinion of the inmate-patient). Further, the record does not indicate that the course of treatment provided to him was medically unacceptable; or that defendants acted in conscious disregard of an excessive risk to plaintiff's health. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Lastly, the court notes that defendants He'bert, Mahakian and McDaniel did not personally participate in plaintiff's medical treatment from July 27, 2010 through July 31, 2010. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (liability under 42 U.S.C. § 1983 arises only upon a showing of personal participation by the defendant). Here, defendant He'bert is an ESP psychologist and defendant Mahakian is an ESP psychiatrist (#97-1, Ex. K, ¶ 1; #97-1, Ex. L, ¶ 1). Neither of these defendants treated plaintiff's alleged physical injuries arising out the July 27, 2010, incident. Defendant McDaniel was ESP's warden in July 2010 (#97-1, Ex. N, ¶ 1). Defendant McDaniel also

did not treat plaintiff, as medical decisions are left to ESP physicians. *Id.* at ¶ 3. Accordingly, none of these defendants personally participated in the alleged constitutional deprivations at stake here.

Plaintiff's claim that defendants exhibited deliberate indifference to his serious medical needs is contrary to the evidence before the court. Plaintiff has failed to demonstrate the existence of any genuine issues of material fact; and has failed to produce any evidence (or even a response) to suggest that defendants acted in conscious disregard of a significant risk to plaintiff's health. Accordingly, the court recommends that defendants' motion for summary judgment (#97) be granted.[12]

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that defendants are entitled to summary judgment in their favor, as there are no genuine issues of material fact for trial. Therefore, the court recommends that defendants' motion for summary judgment (#97) be **GRANTED** in its entirety. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and LR Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[12] Because the court recommends that defendants' motion for summary judgment (#97) be granted, the court need not reach the issue of official capacity.

IV.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#97) be **GRANTED** in its entirety.

**DATED:** August 19, 2013.



_____
**UNITED STATES MAGISTRATE JUDGE**